**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA; and | ) |
| | ) |
| THE STATES OF CALIFORNIA, DELAWARE, | ) |
| FLORIDA, GEORGIA, HAWAII, ILLINOIS, | ) |
| INDIANA, LOUISIANA, MICHIGAN, | ) |
| NEVADA, NEW HAMPSHIRE, NEW MEXICO, | ) Civil Action No. 06-10972 - WGY |
| NEW YORK, TENNESSEE, and TEXAS; and | ) |
| | ) |
| THE COMMONWEALTHS OF | ) |
| MASSACHUSETTS and VIRGINIA; and | ) |
| | ) |
| THE DISTRICT OF COLUMBIA; | ) |
| | ) |
| *ex rel.* KASSIE WESTMORELAND | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AMGEN, INC.; INTERNATIONAL | ) |
| NEPHROLOGY NETWORK; | ) |
| AMERISOURCEBERGEN SPECIALTY | ) |
| GROUP; ASD HEALTHCARE; and | ) |
| AMERISOURCEBERGEN CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION**
**TO STRIKE PORTIONS OF RELATOR'S DAMAGES CLAIMS OR COMPEL**
**RELATOR TO PRODUCE ALL DOCUMENTS SUPPORTING HER DAMAGES**
**<u>THEORIES</u>**

Relator Kassie Westmoreland ("Relator") is pursuing this False Claims Act action, which

she first filed in June 2006, on behalf of the United States, Georgia, and New Mexico[1]

purportedly seeking hundreds of millions of dollars in damages against Defendants Amgen Inc.'s

---

[1] On September 1, 2009, the United States informed the Court that it was not prepared, at that time, to intervene in the action. Although Georgia and New Mexico have not elected to intervene, the Relator purports to be acting on their behalf.

("Amgen") and the INN Defendants.[2]   Relator has squandered 94 days of discovery and only 110

days remain in fact discovery.   However, despite Relator's obligation to come forward with any

evidence of damages that she intends to seek at trial, she has not lifted a finger to produce or find

any such evidence.  Relator has produced nothing to support her alleged damages claim,[3] has

said that she has nothing to provide, and has done nothing to identify a single false claim

submitted to the government for reimbursement.

Relator alleges that Amgen's intentional manipulation of the overfill amounts in

Aranesp® vials and Defendants' provision of unlawful kickbacks in marketing Aranesp® caused

providers to submit false claims to Medicare and other federal health care programs, as well as to

state government health care programs.  On behalf of the United States, Georgia, and New

Mexico, Relator seeks extensive damages arising out of the submission of these allegedly false,

but yet unidentified claims.

Defendants bring this Motion because Relator has failed to provide access or produce to

Defendants any of the underlying data on which her damages claims must necessarily depend.

Specifically, Relator has failed to provide access or produce to Defendants the documents and

---

[2]       The INN Defendants are Integrated Nephrology Network, AmerisourceBergen Specialty Group, ASD
Healthcare, and AmerisourceBergen Corporation.
[3]       Furthermore, despite repeated discovery requests from Amgen and the INN Defendants, Relator has
asserted that document requests and other discovery requests seeking information relating to her damages theories
and the identification of claims that might be involved in any purported damages theory are overly broad or are
unduly burdensome.  However, she has done nothing to substantiate her assertions of "undue burden" or
"overbreadth" particularly in light of the scope of her own allegations.  *See Mancia v. Mayflower Textile Servs. Co.*,
253 F.R.D. 354, (D.Md. 2008) (a responding party who provides boilerplate, non-particularized objections to
document requests waive any legitimate objection they may have had and run afoul of their Rule 26(g) obligation to
make a reasonable inquiry before objecting); *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D.
255 (M.D.N.C. 2001) (reasons for objections must be explicitly stated or Rule 34 implicitly provides for waiver of
objection).  In light of the scope of her allegations and the inflammatory language of the allegations of fraud, this
appears to be an improper attempt by the Relator to evade her discovery obligations.  *See, e.g.*, *Weller v. American
Home Assur. Co.*, Civ. No. 3:05-090, 2007 U.S. Dist. LEXIS 27284, at *12 (N.D. W.Va. Apr. 10, 2007) (finding
that "[a] party seeking to avoid discovery on the basis of an undue burden has the burden of producing evidence of
that burden.  It must be specifically shown how compliance with the discovery request would result in an undue
burden.") (citations omitted).

data relating to the allegedly false claims submitted to the federal and state health care programs on whose behalf she has brought this lawsuit.  Relator has not only failed to identify a single, specific false claim allegedly submitted to these government health care programs, but she has also failed to provide access or produce to Defendants any claims data relating to the damages she seeks to recover.  Instead, Relator has offered only a damages "theory" unsubstantiated by any of the detail or factual data that is plainly required by Rule 26(a) and that has been specifically requested by Defendants through numerous discovery requests.

Relator contends that she cannot provide the damages computation required by Rule 26(a) because she does not possess the necessary claims data from the federal and state health care programs.  Notably, she has not identified even one false claim or a single dollar of purported damages, despite the requirement in Fed. R. Civ. P. 26(a)(1)(A)(iii) that a party provide "a computation of each category of damages" and "make available for inspection and copying as under Rule 34 the documents or other evidentiary material … on which each computation is based."  Her claim that she needs to take additional discovery to provide such basic information to support her complaint, however, is a hollow excuse because Relator has failed to make any effort since filing this action in June 2006 or during the first three months of discovery to obtain this claims data.  Relator's failure is particularly disconcerting and significant in light of the following facts:

- Together with the United States, Relator has had nearly four years since filing this action to investigate and support her claims;

- The parties are now roughly halfway through the fact discovery period provided by the Court;

- Defendants have repeatedly and in good faith sought from Relator additional information and the data underlying her damages claims under Fed. R. Civ. P. 26, 33, and 34, and Local Rule 37.1;

- Relator and her counsel have failed to issue a single third-party subpoena and have refused to even inform Defendants of what additional damages information and data she expects to elicit during the remainder of the discovery period or of what steps, if any, she plans to take to obtain such data from third parties;

- Defendants' efforts to independently obtain the claims data and related documents to even begin to understand Relator's potential damages claims and theories through Rule 45 subpoenas served on the real parties in interest have been met with substantial resistance.

In light of these factors, Defendants respectfully move for an order under Fed. R. Civ. P. 37(c)(1) and 37(c)(1)(C) striking those portions of Relator's damages claims on behalf of the Federal Government, Georgia, and New Mexico that depend on claims data from their respective health care programs, barring Relator from relying on such claims data, or, in the alternative, an order pursuant to Rule 37(a) compelling Relator to produce such claims data by April 1, 2010.

**FACTUAL BACKGROUND**

**A.      Relator's Damages Claims and Theories.**

On behalf of the Federal Government, Relator seeks to recover damages from Defendants for each "false and/or fraudulent claim[]" that Defendants caused to be submitted to the Federal Government and the States of Georgia, and New Mexico.  (Relator's Third Amended Complaint (TAC), ¶¶ 154-199).  The TAC does not identify specific claims that were allegedly false and/or fraudulent, and claims only that the federal and state entities suffered significant losses in an amount to be determined.  (*See*, *e.g.*, TAC, ¶ 164).

On December 1, 2009, Relator and the Intervening States (collectively, "Plaintiffs") served joint initial disclosures under Rule 26(a), which requires Plaintiffs to provide "a computation of each category of damages claimed" and to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or

protected from disclosure, on which each computation is based, including materials bearing on

the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)A)(iii).

Plaintiffs' disclosures do not contain a damages computation or citation to a single

document, but rather consist of a legal discussion of Plaintiffs' legal theories regarding the

measure of damages purportedly available under the False Claims Act. (Ex. A, Plaintiffs' Rule

26 Initial Disclosures).  As a result, it is clear that the Relator intends to seek recovery of

purported damages that she alleges were actually suffered by the government.  Plaintiffs'

damages disclosures also contain a broad listing of categories of damages, each of which

depends the amount of <u>claims</u> submitted for Aranesp® to federal and state health care programs:

- Plaintiffs contend that the "[e]ntire amount of **any claims**" for Aranesp® submitted by a provider offered a kickback will be calculated by adding (1) the number of prescriptions improperly induced "and paid by [sic] the Medicaid, Medicare, and other government health care programs," (2) pharmacy "**claims paid**" by government health care programs after their provider switched from Procrit® to Aranesp®, and (3) "**claims paid**" by the government health care programs for overfill in Aranesp®. (Ex. A, pp. 89-90.)

- Plaintiffs assert that damages stemming from the alleged conspiracy to offer kickbacks will be calculated by looking at (1) "**claims** for Aranesp® post-attendance of the advisory meetings" compared to "**claims** prior to attending" the meetings.  (Ex. A, pp. 90-91.)

- Plaintiffs posit that the amount of "**all claims**" "administered or prescribed" by practice groups allegedly influenced by INN will be calculated "based on Aranesp **claims paid**" by government health care programs.  (Ex. A, p. 91.)

- Plaintiffs contend that the inflation of the Average Sales Price for Aranesp® will be calculated by examining "the number of false **claims** for Aranesp," which "would total in the hundreds of thousands post January 1, 2005, when [the Center for Medicare and Medicaid Services ("CMS")] instituted the ASP reimbursement rate methodology for Medicare."  (Ex. A, pp. 92-93.)

Yet, despite the fact that claims data is essential to Relator's damages theories, the disclosures

contain no estimate, let alone computation, of the amount of Aranesp® claims submitted to the

federal, Georgia, or New Mexico health care programs.  Moreover, Relator has refused to

supplement these disclosures with any additional factual material and claims data,

notwithstanding her commitment to do so.  (*See* Ex. A, p. 88 ("The Plaintiffs shall make

available additional claims data supporting their calculations pursuant to an appropriate

Stipulated Confidentiality and Protective Order, after such Order is submitted to and issued by

the Court.").

> **B.**      **Plaintiffs' Failure to Provide Access or Produce to Defendants Documents and Data Relating to the Allegedly False Claims.**

Defendants pointed out the deficiencies in Plaintiffs' damages disclosures and requested

that, as provided by Rule 26(a), Defendants be given access to all documents underlying or

relating Plaintiffs' damages calculations.  (Ex. B, Letter from Eric W. Sitarchuk to Plaintiffs

Counsel dated January 5, 2010).  In response, Relator's counsel claimed that the damages claims

could not be made more precise at that time, because the "calculation [of Plaintiffs' damages]

further depends *on federal government health care program claims and pricing data" and "State*

*Medicaid claims data*," both of which needed to be obtained by subpoena and subject to a

protective order.  (Ex. C, Letter from Suzanne Durrell and Margot Schoenborn to Eric W.

Sitarchuk dated January 12, 2010) (emphasis added).  Plaintiffs included in their response a list

of "Plaintiffs' Outstanding Discovery Requests which May Have a Material Affect on the

Calculation of Damages," but none of those requests related to the above-mentioned claims data.

(*Id.*)

In the three months since providing Plaintiffs' Initial Disclosures, each of the Intervening

States has provided Defendants with at least portions of the claims data for the Aranesp® claims

that will be used to support each of the Intervening States' respective damages claims.  (*See e.g.*,

Ex. D, Collection of claims data cover letters from the Intervening States).  Yet, Relator has still

not provided any claims or pricing data.  What is even more remarkable is that Relator has not,

during the three-plus months of fact discovery, taken any steps to obtain the data on which her

damages analysis admittedly depends, such as issuing subpoenas, and she has refused to disclose

to Defendants what, if any, additional steps she may take to obtain such data, aside from waiting

for documents produced by the Defendants.   This is despite repeated good-faith efforts on the

part of Defendants to obtain this information from Relator.  (*See, e.g.*, Ex. B; Ex. E, Letter from

Douglas Whitney to Relator's Counsel dated February 10, 2010 regarding deficient Responses to

First Requests for Production; Ex. F, Letter from Douglas Whitney to Relator's Counsel dated

February 22, 2010 regarding deficient Responses to First Requests for Production and Requests

for Admission).

In addition to receiving no underlying factual information pursuant to Rule 26(a), Relator

interposed improper objections to Defendants' document requests for "All documents referring

or relating to any damages sought in the Complaints."  (*See*, *e.g.*, Ex. G, Amgen's First Set of

Request for Production of Documents and Things to Relator; Ex. H, INN Defendants First Set of

Document Requests Directed to Relator).  Relator initially objected to these requests as, among

other things, "overly broad," "unduly burdensome" and "irrelevant" and also objected to this

request as "premature" because "damages will be the subject of expert testimony."  (Ex. I,

Relator's Responses and Objections to Amgen's First Set of Document Requests)   Despite

lengthy correspondence, a full meet and confer session pursuant to Local Rule 37.1, and the

opportunity to submit amended responses, Relator continues to object to Defendants' request for

the same type of damages-related information that must be made available under Rule 26(a).

Relator continues to claim that the production of this information, which is expressly part of the

required Initial Disclosures under Rule 26(a), would be "premature," even though we are now at

the halfway point of fact discovery.  (Ex. J, Letter from Silvija Strikis to Douglas Whitney dated

February 16, 2010; Ex. K, Letter from Silvija Strikis to Douglas Whitney dated February 19, 2010)

Defendants' document requests also expressly sought the claims data referenced by Relator's counsel in the January 12, 2010 correspondence,  (*see*,  Ex. C, at ii), but Relator responded to these requests by stating that that she "is not aware of any nonprivileged documents relating to damages that have been withheld from production"  (Ex. J) .

Apparently, Relator continues to maintain the position that she is not "expected to provide a calculation of damages that depends on information in possession of another party or a third party" and that she is not expected to obtain or produce such materials, despite the fact that she apparently intends to seek actual damages at trial.  While Relator has claimed that she has already produced thousands of pages of documents to Amgen, she can only weakly assert that "many of which are relevant to the issue of damages," and she has not identified a single document or shred of data relating to any specific claims that she contends are false or fraudulent.  And while Relator assured Amgen that documents "will be produced that will permit the parties to refine the damages calculations relating to Aranesp," she has refused to specify what additional documents will be produced and she has refused to specify what additional steps, if any, she plans to take to obtain such documents.  (Ex. J).

### C.      Defendants' Inability to Obtain the Claims Data from Other Sources.

Recognizing, as Relator has, that claims data is the lynchpin of Plaintiffs' articulated damages theory and making every effort to avoid a discovery dispute with Relator, Defendants have attempted to subpoena the relevant claims data. (*See* Ex. L, Notices of CMS and Fiscal Intermediary subpoenas).  The INN Defendants have also sent a FOIA request to CMS. However, Defendants have been stymied from securing responses to these subpoenas and the FOIA request despite their diligent efforts.  The INN Defendants have received neither a

response nor an estimated date on which the government may respond to its FOIA request.

Nearly two months after service of the subpoena on CMS and after several rounds of lengthy

meet and confers with counsel from the U.S. Attorney's Office for the Eastern District of New

York, Department of Justice, and CMS, Defendants were informed in a letter dated February 24,

2010 that providing the requested data would take CMS and its contractors "anywhere from three

to five years" and cost "upward of $5 million." (Ex. M, Letter from Susan M. Bozinko to

Douglas Whitney dated February 24, 2010)

Despite the Relator's and the Government's more than three-and-a-half years of

investigation allowing for unilateral discovery in this matter, the Relator has failed to identify

even a single false claim or to provide the data underlying her claimed damages. Her failure to

take any steps to obtain this data, and the refusal of the federal government – which is the real

party in interest – to reasonably respond to Defendants' Rule 45 subpoenas for this information,

has forced Defendants to the file this motion, in which Defendants respectfully request that the

Court limit Plaintiffs' damages theories, limit her ability to rely on the claims data, or compel her

to produce the claims data by April 1, 2010.

## ARGUMENT

**I.      RELATOR HAS FAILED TO COMPLY WITH RULES 26(A)(1), 33 AND 34 BY FAILING TO PROVIDE ACCESS OR PRODUCE TO DEFENDANT ANY CLAIMS-RELATED DATA.**

Rule 26(a)(1)(A)(iii) automatically requires, as part of a plaintiff's initial disclosures and

without waiting for a discovery request:

> a computation of each category of damages claimed by the
> disclosing party — who must also make available for inspection
> and copying as under Rule 34 the documents or other evidentiary
> material, unless privileged or protected from disclosure, on which
> each computation is based, including materials bearing on the
> nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 26(a)(1)(A)(iii) thus plainly obligates Plaintiffs to provide

a computation of damages and to produce *all* documents supporting that calculation.[4]  *See*

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (faulting plaintiff for failing to

disclose both a computation of its damages and the documents supporting that calculation.)  The

purpose of Rule 26(a) is "to provide an opposing party with an early understanding of the basis

and amount of any damages claim it is facing, so that it may conduct meaningful discovery as to

the underpinnings of such a claim."  *Hewlett-Packard Co. v. Factory Mut. Ins. Co.*, No. 04-cv-

2791, 2006 U.S. Dist. LEXIS 44365, at *40 (S.D.N.Y. Jun. 28, 2006).  Rule 26(a) initial damage

disclosures also allow defendants to "understand the contours of its potential exposure and make

informed decisions as to settlement and discovery."  *City and County of San Francisco v. Tutor-*

*Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).

Relator has plainly failed to comply with Rule 26(a)(1)(A)(iii) because she has failed to

provide the requisite factual support.  *See Dewitt v. Lieberman*, No. 97-cv-4651 1998 U.S. Dist.

LEXIS 9153, at *4 (S.D.N.Y. June 22, 1998) (concluding that the plaintiff's "conclusory

estimate of damages, without any offer of factual support, fails to comply with defendants'

discovery request and [former Rule 26(a)(1)(A)(iii)]"); *see also Sanchez v. Hendrick's Hallowell*

*Chevrolet*, No. 05-cv-746, 2006 U.S. Dist. LEXIS 76195, at *10 (E.D. Cal. Oct. 10, 2006)

(dismissing the plaintiff's suit for failure to comply with discovery obligations including

disclosures of damage calculations).

---

[4]     Although Relator claimed that she has been unable to make such calculations because she will need to rely on experts, the rules specifically address this issue, stating that "[a] party must make its initial disclosures based on the information then reasonably available to it.  A party is not excused from makings its disclosures because it has not fully investigated the case…" Fed. R. Civ. P. 26 (a)(1)(E).  Furthermore, if Relator is permitted to wait until expert discovery to identify damages evidence, the defendants will be precluded from taking any factual discovery regarding these purported claims because, under the Case Management Order, fact discovery will be closed and trial will be only months away.

Relator fails in her Initial Disclosures, Interrogatory Responses, and production of documents to identify any factual support for her damages theories. Relator blames this obvious failure on the fact that she does not possess the claims data necessary to make a damages computation. Yet, during the last three-and-a-half years of her investigation with the help of the federal government and first three months of discovery in this case, Relator either has not made any effort to obtain the relevant claims data to satisfy her obligations under the Federal Rules or she has simply been unable to identify a single false claim, notwithstanding the fact that she is pursuing these claims on behalf of the very entities that possess this claims data.[5]

Courts have repeatedly held that a False Claims plaintiff such as Relator is required to produce the materials relevant to her damages computations, including the underlying claims data. For example, in *United States ex rel. Fry v. Guidant Corp.*, No. 03-0842, 2009 U.S. Dist. LEXIS 88106, at *4-7 (M.D. Tenn. Sept. 24, 2009), the False Claims plaintiff resisted producing the cost reports relating to the alleged false claims on the ground that they were too voluminous to examine individually, it would be unduly burdensome to produce them, and damages could be determined via sampling. *Id.* at *5. The court summarily rejected the plaintiff's arguments, noting that "[i]n a case brought under the False Claims Act, no one could plausibly argue that the documents containing the allegedly false claims are not relevant . . . ." *Id.* at *6. The court further observed that the cost reports "form the basis of a False Claims Act case and are clearly relevant to a determination of liability and damages," and required the plaintiff to produce

---

[5]    Each of the Intervening States, on the other hand, has produced or is in the process of producing at least some relevant claims data and has attempted, or is attempting, to isolate the allegedly false and/or fraudulent claims they are pursuing. And while there are numerous problems with the sufficiency of these claims data productions, the mere fact that the Intervening States have produced claims data sets them far apart from Relator in terms of complying with the federal rules.

immediately "all hospital cost reports containing allegedly false claims for which it seeks to recover in this case." *Id.* at *7.

Another district court recently adopted the *Guidant* court's common sense approach.  In *United States ex rel. Fry v. The Health Alliance of Greater Cincinnati*, No. 03-cv-167, 2009 U.S. Dist. LEXIS 122547, at *7-9 (S.D. Ohio Nov. 20, 2009) the defendant sought production of the false claim forms so that it could determine the plaintiffs computation of damages.  *Id.* at *7. Quoting *Guidant*, the court held "[d]efendants are entitled to review the claims forms in order to assess their liability and damages" and rejected the plaintiff's offer to provide sample claims forms.  *Id.* at *9-10.

The mere fact damages may be the subject of expert testimony does not, as Relator may suggest, allow a party to avoid its obligations under Rules 26(a), 33 and 34.  Courts have made clear that "future expert analysis does not relieve Plaintiff of its obligation to provide information reasonably available to it" regarding the plaintiff's damage calculation.  *Frontline Med. Assocs. Inc. v. Coventry Health Care*, No. 09-3274, 2009 U.S. Dist. LEXUS 109349, at *8 (C.D. Cal. Nov. 6, 2009) (finding the plaintiffs' damages disclosures insufficient); *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 541 (Bankr. D. Del. 2006) (holding "[i]f estimates are made which might be subject to revision with expert opinion, that is entirely permissible, but the requirements of [former Rule 26(a)(1)(A)(iii)] cannot be avoided if the opposing party insists on compliance"); *Dunstan v. Wal-Mart Stores East, L.P.*, No. 07-cv-713, 2008 U.S. Dist. LEXIS 38125, at *3-4 (M.D. Fla. May 9, 2008) (granting defendant's motion to compel a damages computation based on the information currently at hand, rather than after expert depositions, noting "[i]f estimates are made which might be subject

to revision after the deposition of [plaintiff's expert] . . .that is entirely permissible, but the requirements of Rule 26 cannot be avoided.")

Nor does the fact that the claims data is currently in the possession of third parties relieve Relator of her burden to make available and produce *all documents* supporting her damages claims. In *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995), the court rejected this very argument. In that case, the plaintiff contended that the defendant had the responsibility to chase down documents from a third party concerning the plaintiff's ongoing medical treatment and the resulting ongoing damages. *Id.* The court held that argument "border[s] on the frivolous," noting "[a] party may not free itself of the burden to fully comply with the rules of discovery by attempting to place a heretofore unrecognized duty of repeated requests for information on its adversary." *Id.*

The plain command and logic of Rule 26 are particularly compelling here, when the information Relator claims is necessary to prepare the required damages computations resides with the very entities on whose behalf she is pursuing this action – the United States, Georgia, and New Mexico. As courts have rightly noted, these are the real parties in interest, (*see, e.g.*, *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004)) as Relator is pursuing damages on their behalf. Moreover, Relator filed this lawsuit nearly four years ago, and over that period she has been cooperating with federal and state agencies. Any claim that she has not had the opportunity to develop her damages computation cannot withstand scrutiny.

Finally, the real parties in interest have refused to provide Defendants with prompt and reasonable access to the claims data, despite proper Rule 45 subpoenas and FOIA requests that have been served on them. After months of good-faith negotiations with CMS regarding

Defendants' efforts to obtain claims data, counsel for CMS informed Defendants that it would

take three to five years and up to $5 million to provide Defendants the requested claims data.

## II.   RELATOR'S CLAIMS-RELATED DAMAGES SHOULD BE LIMITED OR SHE SHOULD BE COMPELLED TO PRODUCE ALL CLAIMS DATA BY APRIL 1, 2010.

Relator's cavalier and inexcusable disregard of her obligations under the Federal Rules to

provide the requisite factual support for her damages claims warrants the imposition of sanctions.

During the more than three-and-a-half years since she filed this action, and during the first half

of fact discovery, she has made no effort to obtain the very documents and data she contends are

necessary to provide the requisite damages computation, even though those documents and data

are in the possession, custody and control of the parties on whose behalf she is pursuing this

lawsuit.  Sanctions are necessary to protect Defendants' rights in this proceeding, in which

Relator claims to seek hundreds of millions of dollars in damages but has not yet taken even the

most basic steps to obtain and provide the factual material supporting her damages claims.

Pursuant to Rule 37(c), a court may "strike[ ] pleading in whole or in part" if a party "fails

to provide information . . . as required by Rule 26(a)."  A court may also impose appropriate

sanctions listed in Rule 37(b)(2)(A)(i)-(vi), which includes "striking pleadings in whole or in

part" and precluding supporting claims or defenses or introducing certain matters into evidence.

*See* Rule 37(c)(1)(C).  Under Rules 37(a), (b), a party may move to compel a response if another

party "fails to make a disclosure required by Rule 26(a)" or if a party "fails to respond that

inspection will be permitted" under Rule 34.  Fed. R. Civ. P. 37(a)(3).

Relator's blatant disregard of her obligations under Rules 26, 33, and 34 warrant the

imposition of sanctions, which courts have recognized are appropriate when a plaintiff fails to

provide the required damages information under Rule 26.  *See Sanchez v. Hendrick's Hallowell

Chevrolet*, No. 05-cv-746, 2006 U.S. Dist. LEXIS 76195, at *10 (E.D. Cal. Oct. 10, 2006)

(dismissing the plaintiff's suit for failure to comply with discovery obligations including disclosures of damage calculations).

In this case, sanctions are appropriate given the ample opportunity Relator has had to obtain and provide access to the relevant claims data and given her complete disregard for her obligations under the Rules. Relator contends that she should be excused from complying with Rule 26(a) because the entities on whose behalf she is pursuing this action, rather than herself personally, possess the relevant claims data. Yet, Relator has taken no steps to obtain this data and make it available to Defendants as required under Rule 26, and she refuses to even inform Defendants of what steps she may in the future take to obtain documents or data relating to her damages claims.

Here, because Relator has failed to comply with Rule 26, because she has failed to take any steps to obtain the data to support her damages theories during the past three-and-a-half years, because that data resides with entities with whom she has been cooperating and on whose behalf she has been pursuing this lawsuit, because Defendants have been diligent in making good faith efforts to obtain the relevant data, and because Defendants would be substantially prejudiced by the untimely production of such data at the close of discovery, the Court should strike those portions of her damages claims that rely or depend on the claims data that Relator has failed to produce pursuant to Rules 37(c)(1) and 37(b)(2)(A)(iii).

Alternatively, and pursuant to Rule 37(a), Defendants respectfully request that Relator be ordered to produce all documents underlying her damages calculations, including all relevant claims data, by April 1, 2010. Such production is necessary to ensure the that Defendants obtain the "meaningful discovery" envisioned by Rule 26. *Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 44365, at *40.

## CONCLUSION

Relator contends that she cannot provide Defendants the information required under Rule 26 because she does not possess the requisite claims data.  But Relator's position is solely the result of her own neglectful or deliberate inaction over the past three-and-a-half years, during which time she was acting in concert with the very governmental agencies who possess the relevant claims data and on whose behalf she is pursuing these claims.

Relator's complete disregard of her obligations under Rule 26 should not countenanced. The Court should strike any portions of her damages claims that depend on the claims data she has failed to make available and produce or, alternatively, compel Relator to produce such claims data by April 1, 2010.

Dated: March 12, 2010

Respectfully submitted,

/s/ Douglas E. Whitney

Michael Kendall
Daniel A. Curto
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109

David S. Rosenbloom
Douglas E. Whitney
McDermott Will & Emery LLP
227 West Monroe Street
Suite 4400
Chicago, IL 60606-5096

Brien T. O'Connor
Kirsten V. Mayer
Ropes & Gray LLP
One International Place
Boston, MA 02110

*Attorneys for Defendant Amgen Inc.*

/s/ Ryan M. Cunningham
Peter E. Ball (BBO # 546031)
Ryan M. Cunningham (BBO # 661440)
SALLY & FITCH LLP
One Beacon Street
Boston, MA 02108
peb@sally-fitch.com
(617) 542-5542

James M. Becker (admitted pro hac vice)
BUCHANAN INGERSOLL & ROONEY, PC
Two Liberty Place
50 S. 16th St., Suite 3200
Philadelphia, PA  19102
james.becker@bipc.com
(215) 665-5366

Eric W. Sitarchuk (admitted pro hac vice)
Meredith S. Auten (admitted pro hac vice)
Thomas J. Sullivan (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19130
esitarchuk@morganlewis.com
(215)-963-5840
mauten@morganlewis.com
(215)-963-5860
tsullivan@morganlewis.com
(215)-963-5146

David. J. Kessler (admitted pro hac vice)
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
david.kessler@dbr.com
215-988-2486

*Counsel for International Nephrology
Network, AmerisourceBergen Specialty
Group, ASD Healthcare, and
AmerisourceBergen Corp.*

## CERTIFICATE OF SERVICE

I, Ryan M. Cunningham, hereby certify that this motion and its attachments, filed through the Court's CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies are being sent by First Class U.S. Mail on March 12, 2010 to all non-registered participants.

 */s/ Ryan M. Cunningham*
Ryan M. Cunningham (BBO# 661440)
SALLY & FITCH LLP
One Beacon Street
Boston, MA 02108
rmc@sally-fitch.com
(617) 542-5542