# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA; and THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS INDIANA, LOUISIANA, MICHIGAN, NEW HAMPSHIRE, NEW MEXICO, NEW YORK TENNESSEE, and TEXAS; and THE COMMONWEALTHS OF MASSACHUSETTS and VIRGINIA, and THE DISTRICT OF COLUMBIA; ex. reI. KASSIE WESTMORELAND<br><br>Plaintiffs,<br><br>v.<br><br>AMGEN, INC.; INTERNATIONAL NEPHROLOGY NETWORK renamed INTEGRATED NEPHROLOGY NETWORK, a d/b/a of AMERISOURCEBERGEN SPECIALTY GROUP; ASD HEALTHCARE; and AMERISOURCEBERGEN CORPORATION,<br><br>Defendants. | Civil Action No. 06-10972-WGY |

**OPPOSITION OF RELATOR TO DEFENDANTS' JOINT MOTION TO STRIKE PORTIONS OF RELATOR'S DAMAGES CLAIMS OR COMPEL RELATOR TO PRODUCE ALL DOCUMENTS SUPPORTING HER DAMAGES THEORIES**

# TABLE OF CONTENTS

I. RELATOR HAS FULLY COMPLIED WITH HER DISCLOSURE OBLIGATIONS ............5

    A. Relator's Initial Disclosures Are Sufficient ...................................................................5

    B. Relator's Subsequent Disclosures Have Been Sufficient...............................................6

    C. The Cases Cited By Defendants Are Inapposite ..........................................................10

    D. The Analysis of Damages Will Be The Subject Of Expert Testimony In This Case .................................................................................................................................12

    E. Defendants Have Failed To Produce Relevant Information.........................................13

    F. Defendants Are Fully Apprised Of Their Exposure ......................................................14

II. EVEN IF THE COURT CONCLUDES THAT RELATOR'S INITIAL DAMAGES DISCLOSURES SHOULD BE SUPPLEMENTED, THERE IS NO BASIS TO STRIKE RELATOR'S DAMAGES CLAIMS AND THEORIES............................................16

CONCLUSION................................................................................................................................17

In this action brought pursuant to the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3729, Relator alleges that Defendants illegally marketed the overfill (*i.e.*, the drug product in excess of the labeled fill volume) in vials of Aranesp to medical providers, in order to induce them to purchase and use Aranesp instead of a competitor drug and to improperly seek reimbursement for Aranesp from federal and state healthcare programs.  The alleged scheme involves the administration of overfill amounts of Aranesp, with corresponding billing of federal and state health care programs, for amounts that were not medically necessary, as well as the billing of federal and state health care programs for overfill amounts of Aranesp that were not in fact administered to patients.  It is beyond argument that billing the government for unnecessary or undelivered services violates the False Claims Act.  *See United States ex rel. Hutcheson v. Blackstone Med., Inc.*, No. 06-11771-WGY, 2010 WL 938361, at *16 (D. Mass. Mar. 12, 2010) ("Had the Amended Complaint alleged that Blackstone induced doctors to perform medically unnecessary surgeries for which they sought reimbursement from Medicare, this Court would reach a different conclusion.")

Defendants acknowledge as much, but seek to escape liability in this case during the discovery period by (incorrectly) claiming that Relator has not identified any false claims or provided related data to Defendants.  Defendants' motion is, in fact, premised on an assertion that Relator has not provided enough information because, by the time of her initial disclosures, she was required to possess all relevant information available to governmental entities (as well as, apparently, information possessed by Defendants themselves).  Defendants are simply wrong.

There is no such burden on Relator, any other *qui tam* relator, or any party.  In any event, much specific data about false claims – including the amount of claims for damages purposes – has, in fact, been produced in this matter, beginning with the Relator's Rule 26(a) disclosures,

Relator's Second Amended Complaint,[1] Relator's Third Amended Complaint,[2] and continuing in subsequent discovery responses. That more information or data will be obtained by Relator through various appropriate methods, including party and subpoena discovery processes, does not invalidate Relator's claims or make her disclosures insufficient at the time they were provided. Relator understands that her duty to supplement disclosures and to provide documentation supporting such disclosures is ongoing and, as Defendants have been assured, she intends to continue to comply with these obligations, as she has to date.

Defendants also misstate both the law and the record regarding the level of specificity and detail of the damages disclosures that are required to be (and have been) provided at this stage of the proceedings. *See, e.g., Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-S, 2007 WL 2407255, at *2 (W.D. Ky. Aug. 20, 2007) (Rule 26(a)(1) disclosures are only required to inform "the defendants of the contours of their potential exposure" and "basic" information about the categories of damages). Indeed, Defendants' decision to seek this Court's intervention to strike Relator's claims is surprising, considering that, to cite just one prominent example, Defendants' own document production (due almost one month ago, on March 1) remains incomplete.

Moreover, even though it is not the appropriate time for the Court to consider matters relating to expert analysis of claims data that may be considered in this proceeding, Defendants seek to convince the Court that it should conclude that this case is futile from the outset because (Defendants allege) it will take the federal government millions of dollars and several years to

---

[1] *See* Second Amended Complaint at 47, 54-55, Table 1 (describing Medicare totals for Aranesp claims and disbursements by year), Table 4 (listing Medicare Part A and B Aranesp claims for Rockland Renal) (Relator Exh. A, attached hereto).

[2] *See* Third Amended Complaint at 54-55, 62-63, Table 1 (describing Medicare totals for Aranesp claims and disbursements by year), Table 4 (listing Medicare Part A and B Aranesp claims for Rockland Renal) (Relator Exh. B, attached hereto).

provide any discovery that could be used in this case.  *See* Defendants' Mem. at 9.  Defendants mislead the Court.  Defendants *already possess* summaries of claims data produced by CMS sufficient to apprise them their exposure to damages in this case.  As just one example, Defendants had in their possession annual summaries of claims data that could have informed Defendants of the "contours" of their potential exposure and "make informed decisions as to settlement and recovery," Defts' Mem, at 10, as early as March 5, 2010, well *before* they filed this motion.  *See* Email Message from Susan Bozinko to Douglas Whitney (March 5, 2010) (message from CMS attorney-adviser attaching summaries of claims data for 2007 and 2008) (Relator Exh. C, attached hereto); Email Message from Susan Bozinko to Douglas Whitney (March 10, 2010) (Relator Exh. D, attached hereto) (message from CMS attorney-adviser attaching summaries of claims data for 2004 through 2008).

   Despite the fact that they had summaries of federal claims data, Defendants cast their motion as if they have yet to receive any useful information from Relator or the federal government.  And despite a representation just this week that they had produced all materials received from third parties pursuant to subpoena by March 24, Defendants *have not produced any of the summaries of CMS claims data to Relator*..  Relator, in fact, just received the information from CMS today.  Apparently, parties to this litigation other than Defendants were under the impression that third-party discovery would be provided to other parties (as the parties had agreed months ago).  Defendants' conduct in bringing this motion and hiding information is wasteful of the parties' and the Court's time and maligns the spirit of Rule 45, which is intended to foster cooperation among parties with respect to discovery from non-parties.  *See infra* at 8.  And, contrary to Defendants' unsupported assertions, Relator has been working with the federal

government to obtain relevant information in a usable format that will not require years or millions of dollars to produce.

The information provided to Defendants by CMS beginning on March 5 and continuing through today, contains exactly the type of information that Defendants seek in their motion to understand their overall damages exposure. It includes yearly utilization totals for physician-administered J and Q codes (*i.e.*, reimbursement amounts paid by Medicare by year and particular injection procedure). Further productions will focus on production of additional data, including more detailed information where available, that will be available to all parties for purposes of their damages models (which likely will require expert analysis). Relator has just received the CMS data and will review and supplement her disclosures as appropriate.

Moreover, the information Defendants acknowledge receiving from State Plaintiffs also includes federal claims information. For example, claims information produced by the State of New York reflects detailed information on more than 1,500 specific claims for Aranesp overfill that were paid in part by the federal Medicare program. Massachusetts has produced similar data for at least 144 claims.

On the above facts alone, Defendants' motion should be denied based on Defendants' numerous misrepresentations of the record and their failure to mention in the "good faith" meet and confer process that Defendants had received summaries of claims data from CMS and other third parties. Moreover, even if Defendants' misrepresentations are overlooked, their motion is unnecessary: Relator has repeatedly assured Defendants that additional information regarding claims data and damages would be produced as received. And, to the extent Defendants seek something further from the federal government through subpoena or Freedom of Information Act (FOIA) request that they have not already received, the appropriate action is to move to compel

the production of that information from the government, not to strike Relator's damages claims. As to the law, there is none that supports Defendants' request for sanctions, which should also be denied.

## I.  RELATOR HAS FULLY COMPLIED WITH HER DISCLOSURE OBLIGATIONS

### A.  Relator's Initial Disclosures Are Sufficient

Relator has fully complied with her current disclosure obligations.  Relator's Initial Disclosures contain a well-developed damages calculation methodology that spans eight pages. (*See* Initial Disclosures at 88-95, Defts' Exh. A.)  Relator also has produced thousands of documents, totaling approximately 150,000 pages, to Amgen, many of which are relevant to the issue of damages.  *See Charter Envtl., Inc. v. Shaw Envtl., Inc.*, No. 07-cv-11609, 2009 U.S. Dist. LEXIS 83404, at *48-*50 (D. Mass. Sept. 14, 2009) ("I find that the Defendants satisfied their obligations under Rule 26(a)(1)(A)(iii) by producing thousands of pages of documents . . . that go toward computation of damages.").  Indeed, Relator is not aware of any nonprivileged documents relating to damages that she has withheld from production.  Relator has not failed to disclose any information in her possession to Defendants, and thus has not violated Rule 37(c), which focuses on sanctions in the event of failure to disclose or refusal to update.[3]

Defendants misstate the standard governing the level of specificity that Relator is obligated to provide at this stage with respect to the calculation of damages.  Courts have

---

[3] Any "deficiencies" that Defendants allege in Relator's initial disclosures are "substantially justified" because, for example, discovery from Defendants is still outstanding, and Relator is currently in the process of obtaining relevant claims data from CMS, which is a government agency that is not subject to Relator's (or Defendants') control. In addition, unlike cases involving failure to produce a few documents relevant to damages, *see*, *e.g.*, *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995), compilation of the claims data in these proceedings, including into damages models and computations, is reasonably a more involved process.

5

recognized that while the rule requires disclosure of "a computation of [each] category of damages claimed," at the outset of active litigation, Rule 26 "does not elaborate on the level of specificity required in the initial damages disclosure." *City and County of San Francisco, et al. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)) (alteration to reflect updates to Rule). Relator's Initial Disclosures meet the requirements of Rule 26. *See United States ex rel. Repko v. Guthrie Clinic, P.C.*, No. 04-CV-1556, 2009 U.S. Dist. LEXIS 53070, at *6-*9 (M.D. Pa. June 23, 2009)

      **B.**    **Relator's Subsequent Disclosures Have Been Sufficient**

Contrary to Defendants' representations, Relator has, in good faith, been working with the government to obtain further data to update her initial disclosures, and she has informed Defendants that she fully intends to supplement her initial damages disclosures to include the additional information that she obtains. *See* Letter from S. Durrell and M. Schoenborn to Eric W. Sitarchuk at 1 (Jan 12, 2010) (Defts' Exh. C) ("[W]e will supplement our damages disclosures once we obtain more information . . . ."); Letter from S. Strikis to D. Whitney at 2 (Feb. 16, 2010) (Defts' Exh. J) ("Relator fully expects that, as discovery progresses, information will be produced that will permit the parties to refine the damages calculations relevant to Defendants' misconduct relating to Aranesp, at which time damages models will be supplemented as appropriate and consistent with Rule 26(e)."); *see also* Letter from M. Schoenborn to E. Sitarchuk at 2 (Feb. 18, 2010) (Relator Exh.E) ("Plaintiffs do intend to supplement . . . ."). Indeed, Relator supplemented her disclosures by specifying categories of documents relating to damages that Relator has produced to Amgen. *See* Letter from S. Strikis to D. Whitney at 1 (Feb. 19, 2010) (Defts' Exh. K) ("[I]n the spirit of cooperation, we advise you

6

that Relator has produced documents that relate to damages in the following non-exhaustive categories . . . .")

Defendants received similar representations from the State Plaintiffs and acknowledge that additional claims data was produced.  *See* Defts' Mot. at 6.  Based on that information, Defendants apparently chose not to move against the State Plaintiffs.  Relator has incorporated by reference the State claims data.  Third Am. Compl. ¶¶ 14, 45, 53, 58.

What Defendants have missed is that the data provided by the States includes significant detail about Aranesp overfill claims that contain both federal and state false claims.  Many claims included in the State data are "dual eligible" claims, meaning that both the federal and state governments participated in payment of those claims.  Detailed data about dual eligible claims, including the procedure code, the claim number, the procedure name, the date, the reimbursement amount, the billed amount, and the provider name, are included in the information already provided to Defendants.  Accordingly, Defendants' claim that Relator has not identified a single false claim is, in fact, false.

Instead of fairly reviewing the information provided (or posing questions if they did not understand it), Defendants decided to file this motion.  Defendants also wrongly assert that Relator should have everything in the federal government's possession, as if she has been personally involved in conducting discovery during the time this case was under seal.  *See*, *e.g.*, Defts' Mem. at 9.  That is simply and logically not the case.[4]

---

[4] While Relator has been working with the Department of Justice, that does not mean that Relator *is* the Department of Justice, as Defendants assert.  In fact, Defendants have also likely been cooperating with the government's investigation, yet no one would expect them to have become privy to everything known to the prosecutors as a result.  *See* Amgen 10k at 48-49 (filed Mar. 1, 2010) (Relator Exh. F, attached hereto)  Moreover, the fact that criminal investigation of Amgen's practices is pending complicates – not enables – Relator's ability to obtain information from the government.  *See* United States Attorneys' Manual, Title 9, Criminal Resources Manual 932, *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm00932.htm.  ("Prosecutors and

Next, Defendants claim that they have been attempting to obtain information from the federal government, while Relator "failed to make any effort" to obtain claims data, Defts' Mem. at 3.  That contention is also not true.  Relator's decision not to issue duplicative subpoenas to government agencies that were working to respond to Defendants' subpoenas requesting (among other items) Aranesp claims data is not surprising.  The nature of Rule 45 is intended to be *cooperative* so that parties can *share* the related discovery.  *See* Fed. R. Civ. P. 45(b)(1) 1991 Advisory Committee's Note (noting that the purpose of the notice provision contained in Rule 45(b)(1) is, among other things, to allow other parties to the litigation to "monitor the discovery and in order to pursue access to any information that may or should be produced"); Steven Baicker-McKee, William M. Janssen & John B. Corr, Federal Civil Rules Handbook 964 (2009) ("[N]otice must be served on all parties prior to service on the recipient so that they may assert any privileges or objections and may obtain the same or additional documents."); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386-87 (7th Cir. 2008) (failure to give notice and withholding of documents received in response to third-party subpoenas is sanctionable conduct).  Defendants' conclusion that Relator failed to issue duplicative discovery demands means that she has taken no efforts to obtain information does not follow.  Relator has made clear that she expects to receive from Defendants the documents they have subpoenaed from third parties.  *See, e.g.*, Plaintiff/Relator Kassie Westmoreland's First Set of Requests for Production of Documents and Things to Defendants ¶¶ 128-131 (Dec. 31, 2009) (Relator Exh. G, attached hereto) (seeking documents obtained by Defendants from various federal government agencies pursuant to Amgen subpoenas issued in December 2009).

---

agents dealing with qui tam relators and their counsel should be very careful to follow Rule 6(e), Federal Rules Criminal Procedure, and its general prohibition against disclosing matters occurring before the grand jury. Prosecutors and agents should also be careful about sharing information with attorneys and agents or employees working on the civil aspects of criminal cases.").

Moreover, Relator's counsel have, in fact, discussed the production of claims data on several occasions with federal government representatives, including, but not limited to Medicare claims data. Consistent with what is expected in the discovery process, these efforts are ongoing and Relator's attorneys are not required to report to Defendants about those efforts (just as Defendants do not report to Relator about their efforts). Relator has also been in communication with attorneys for the now-dismissed states of Georgia and New Mexico to determine how best to obtain additional information from those parties and to assess whether to replead related claims.

Relator's inability to provide more fulsome information regarding her damages claims at this time also can, in part, be traced back to the fact that Defendants have failed to produce the information uniquely in their possession relating to sales of Aranesp and the like, as well as the fact that until specifically requested *several* times, Defendants failed to produce to Relator the information that they were obtaining from the various federal agencies and other entities to which they had issued subpoenas.

Finally, based on one letter that is part of numerous communications not presented to Relator or the Court, Defendants apparently expect the Court to rule based on a theory that the discovery "necessary" for this case is impossible because it would take three to five years and cost $5 million. If such arguments could constitute grounds to strike damages, then fraud involving expensive discovery would not be actionable.

But the concern is not legitimate in any event. Defendants misrepresent the contents of the letter. Rather than supporting that proof of Relator's claims is bound to be immensely cost-prohibitive and time-consuming, in reality, the CMS letter states that "some contractors have estimated" that Amgen's document requests "as drafted" will take that long and cost that much.

9

The letter states that CMS "continues to diligently work to obtain information responsive to your subpoena" and "will continue every effort to promptly respond." Letter from Susan M. Bozinko to Douglas Whitney (Feb. 24, 2010) (Defts' Exh. M). Nowhere does the letter state that sufficient claims data will not—or cannot—be produced.[5] In response (and after conference with the federal government), Relator issued a more narrowly tailored subpoena to CMS. It is Relator's understanding that CMS will comply with a reasonable production of claims data – without years of effort and millions of dollars of burden. And if it does not, any motion to compel will lie against CMS. None of these circumstances support Defendants' pending request to dismiss Relator's damages claims.

In sum, each of Defendants' factual predicates is unfounded. Relator has not refused to provide information in her possession, custody, or control. Nor has she failed to seek relevant discovery. Information relevant to identify false claims and determine damages has been produced and more will be produced forthwith. Discovery is not so expensive and time-consuming for the government to produce that none can be obtained. And, as the record submitted by Defendants reflects, Relator will update her damages models as appropriate as the case proceeds.

### C. The Cases Cited By Defendants Are Inapposite

In support of their joint motion, Defendants cite a number of cases that are nothing like the matter before this Court. For example, Defendants cite *Dewitt v. Lieberman*, No. 97-cv-4651, 1998 U.S. Dist. LEXIS 9153, at *4 (S.D.N.Y. June 22, 1998), for the proposition that a conclusory estimate of damages without factual support fails to comply with Rule 26, *See* Defts' Mem. at 10. In *Dewitt*, a *pro se* employment discrimination action, plaintiff's initial disclosure

---

[5] Even though this letter is dated February 24, 2010, Defendants did not provide a copy to Relator before filing their motion. Nor was it discussed with Relator during the meet and confer process.

listed implausible and undefined categories of damages, including "Torture of plaintiff, $100,000," "Deliberate intent to inflict torture, $100,000," "Job Denial, $100,000," and "Backstairs case, Highway South Bronx & 59th Bridge, $100,000." *Id.* The notion that Relator's detailed damages disclosures could be compared to such frivolity defies reason.

Defendants also misrepresent the extent to which Relator can be compelled to provide granular detail regarding every false claim subsumed in the Aranesp scheme. As noted in *Blackstone*, a presumption can be drawn that the federal government would not have paid for *any* Aranesp claims if it had known of the underlying illegality (whether medically necessary or not). 2010 WL 938361, at *16 ("Although the government did not lose any excess money by the use of Blackstone products, it likely would not have paid for the cost associated with the surgery, including the use of the Blackstone product, had it known of the kickback for such use.") Along the same lines, courts have held that sampling or interpolation provide a fully adequate basis upon which to calculate damages in *qui tam* actions. *See*, *e.g.*, *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (rejecting defendant's "argument that the district judge had to address each of the 1,812 claim forms" as "a formula for paralysis"; "Statistical analysis should suffice."); *United States ex rel. Doe v. Degregorio*, 510 F. Supp. 2d 877, 890 (M.D. Fla. 2007) (using sampling to support damages in False Claims Act case because "[t]he computation of damages does not have to be done with mathematical precision but, rather, may be based upon a reasonable estimate of the loss"); *Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1329-30 (N.D. Ill. 1991) (rejecting defendant's demand for discovery from all class members because "extrapolation from a representative sample is [not] less likely than is full discovery to produce an accurate reflection of total damages"). Instead of acknowledging such precedent, Defendants

rely on outlier caselaw to assert that Relator's entire damages theory should be struck before the completion of discovery.

**D. The Analysis of Damages Will Be The Subject Of Expert Testimony In This Case**

Relator is not required to state damages with specificity at this point in the litigation, particularly when experts will be retained and provide reports and testimony at a time established by the Court's Case Management Order. *See*, *e.g.*, *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004) ("Particularly in advance of an exchange of expert reports, the purpose of damages interrogatories is not to inquire into every specific factual detail that a party will rely on, but rather to determine the categories of damages sought, the methodologies for calculating them, and the general types of evidence on which the calculations are ultimately grounded.").

Where, as here, expert analysis is required for damages calculations, plaintiffs need not provide an exact damages formula, but need only provide a general theory of damages. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02-C-5893, 2004 U.S. Dist. LEXIS 18993, at *6-*7 (N.D. Ill. Sept. 20, 2004) (holding, in a securities fraud case, that where expert analysis is required to determine damages, "[i]t is unreasonable for defendants to expect the exact damages formula" to be used by plaintiffs and that defendants' knowledge of plaintiffs' "general theory of damages" and the provision of documents showing plaintiffs' transactions in the underlying securities is sufficient to comply with Rule 26(a)).  Relator and the State Plaintiffs have provided just such a general theory, a number of states have provided documents showing reimbursement being sought for apparently fraudulent transactions, and Relator continues to work with the federal government to obtain and provide defendants with documents showing the same.  *See supra* notes 1-2 (describing claims information contained in the complaint).  Indeed,

Relator provided damages and reimbursement figures, as well as numbers of claims. *See* Relator's Second Amended Complaint at 47 (Table I, showing total medicare Aranesp claims). This is more than enough at this point in the litigation. *See Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 691 (D. Kan. 1996) (disclosures need be based only on an investigation that is "reasonable under the circumstances"); *see also Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-S, 2007 WL 2407255, at *2 (W.D. Ky. Aug. 20, 2007) (Rule 26(a)(1) disclosures are only required to inform "the defendants of the contours of their potential exposure" and "basic" information about the categories of damages).

Defendants cite *Tutor-Saliba*, 218 F.R.D. at 221, for the non-controversial proposition that one purpose of Rule 26(a) initial disclosures is to allow defendants to understand the contours of its potential exposure and make informed decisions as to settlement and recovery, Deft's Mem. at 10. But *Tutor-Saliba* recognized that in some cases it is "appropriate to defer further specification to *e.g.* development of expert testimony," 218 F.R.D. at 221, and it ultimately concluded that the plaintiff "should provide its assessment of damages in light of the information currently available to it," *id*. The court did not "mandate disclosure of precise calculations given that many of the documents which are likely to inform the calculation remain in Defendants' hands and some level of expert analysis may be required." *Id.* at 222. "The Plaintiffs need not engage at this stage in the level of detail sought by Defendants who seek, *e.g.*, a breakdown for each alleged act of fraud, statutory violation, etc." *Id*.

### E. Defendants Have Failed To Produce Relevant Information

Defendants' production of records relevant to their involvement in the filing of false claims relating to Aranesp is ongoing. For this other reason, Relator is not required to present final damages computations at this time. *See Repko*, 2009 U.S. Dist. LEXIS 53070, at *6-*9

(concluding that relator complied with Rule 26(a)(1)(A)(iii) where he "used the formula set forth in the False Claims Act to provide a damage calculation" and where certain exhibits and documents used for the calculation were allegedly in defendants' possession). As one example, Amgen has not yet produced basic information that could reasonably be expected to be relevant to the damages claim, such as sales data for Aranesp, and other documentation relating to the conspiracy.

Defendants cite *Atkinson Freight*, 164 F.R.D. at 20, for the proposition that a party may not free itself of the burden to fully comply with the rules of discovery by attempting to place a duty to request for information on its adversary. *See* Deft's Mem. at 13. But *Atkinson Freight* involved a plaintiff who failed to turn over medical records in a suit in which they had been requested in discovery and his injuries were at issue, on the grounds that the records were in the possession of his doctor. CMS is not Relator's doctor, and the claim forms at issue in this case are not Relator's personal medical records.

This case – particularly at the current posture – is quite different from *United States ex rel. Fry v. Health Alliance*, No. 1:03-cv-167, 2009 U.S. Dist. LEXIS 122547 (S.D. Ohio Nov. 20, 2009), one of the only qui tam suits cited by Defendants. In *Health Alliance*, the Court ordered the United States (which had intervened) to produce all the claim forms at issue – and after the close of discovery. Relator is bringing suit in the name of the United States, but does not have direct access to the same documents, except by Rule 45 subpoena and requests pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Nor is she required to personally possess all documentation relevant to the *qui tam* suit in order to pursue it. Relevant documents continue to be produced, including by the federal government. Defendants deliberately chose *not* to bring this motion to compel against the United States government under their Rule 45

14

subpoena, although that would be the correct target if Defendants truly thought they could support the requests and needed the discovery.[6]

### F. Defendants Are Fully Apprised Of Their Exposure

This is not a case where Defendants do not know what is at stake. Unlike in *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006), relied upon by Deft's Mem. at 10, where the plaintiff totally failed to disclose that it was seeking lost profits in its initial disclosures or in subsequent discovery, and only revealed that it would seek lost profits approximately a year and a half after discovery closed and "shortly" before trial, *Design*, 469 F.3d at 295, Relator in this case has disclosed the nature of its allegations and the damages that it seeks from the outset and is diligently working with the government and pursuing third-party discovery to supplement its disclosures. The allegations described above and in the complaint in this case show that every single sale of Aranesp was tainted by an anti-kickback violation. Moreover, in *Design*, the scope of the missing data underlying the lost profits calculation was limited to a single company that,

---

[6] Similarly, the quantity of cost reports at issue in *United States ex rel. Fry v. Guidant Corp*, No. 03-0842, 2009 U.S. Dist. LEXIS 88106, at *4-*7 (M.D. Tenn. Sept. 24, 2009), Amgen Mem. at 11, numbered only between 8,213 and 16,323. The claims data in this case spans potentially "hundreds of thousands of claims from 2001 to present," Amgen Exh. M at 2, which is an exponentially larger figure that will take more time and resources to obtain from CMS. And as above, *Guidant* was case in which the United States had intervened.

Amgen cites *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004), for the proposition that the United States, Georgia, and New Mexico are the "real parties in interest," Amgen Mem. at 13, implying that Relator should be readily able to obtain claims data from them. But the United States has made clear to both sides that it does not consider itself to be a party in this case for the purposes of discovery—hence the need for Rule 45 subpoenas. And the issue in *Karvelas* was whether a Relator should be allowed to plead generally at the outset and then amend its complaint at the 12(b)(6) stage based on discovery in order to comply with Rule 9(b)'s heightened pleading requirements. *Karvelas* only tangentially mentioned that the United States is the "real party in interest" in the case—a point that Relator in no way disputes. Rule 9(b) is not at issue in this discovery dispute.


presumably, could have—but failed through gross lack of diligence—to produce in discovery evidence of its *own* lost profits.

Relator advised Defendants that it intends to continue supplementing its damages disclosures, and Defendants inexplicably elected to file this unnecessary motion, wasting this Court's (and Relator's) valuable time, which is better spent focusing on the numerous live issues in this case that genuinely require their respective focus and attention, particularly in light of the accelerated schedule in this case.

## II. EVEN IF THE COURT CONCLUDES THAT RELATOR'S INITIAL DAMAGES DISCLOSURES SHOULD BE SUPPLEMENTED, THERE IS NO BASIS TO STRIKE RELATOR'S DAMAGES CLAIMS AND THEORIES

Defendants boldly – and without any support in the case law – proclaim that Relator's damages claims should be stricken. According to Defendants, this matter apparently should be likened to *Sanchez v. Hendrick's Hallowell Chevrolet*, No. 05-cv-00746, 2006 U.S. Dist. LEXIS 76195, at *8, *10 (E.D. Cal. Oct. 10, 2006), which was an employment case involving the violation of a magistrate judge's order granting a motion to compel. The suit in *Hendrick's* was so frivolous that plaintiff offered to dismiss his case and his counsel failed to appear for the hearing on the motion for sanctions. Under those circumstances, the court sanctioned plaintiff for failing to comply with a discovery order where "it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with court orders enforcing the rules in flagrant disregard of those rules or orders." *Hendrick's* at *6 (internal quotation marks omitted).

Relator has violated no order, rule or law. This case involves dozens of attorneys, numerous parties, and countless moving parts. Relator has been earnest and diligent in discharging her obligations in this case, including her discovery obligations. Defendants'

comparison of Relator's efforts to the efforts of an attorney so derelict that he failed to show up for a sanctions hearing is disingenuous at best. And, even in *Hendrick's*, the court declined to award defendants the fees and expenses of the sanctions motion. *See also United States ex rel. Repko v. Guthrie Clinic, P.C.*, No. 04-CV-15562008 U.S. Dist. LEXIS 47795, at *5-*8 (M.D. Pa. June 18, 2008) (declining to award sanctions in *qui tam* case where United States had not intervened).

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike Portions of Relator's Damages Claims or Compel Relator to Produce All Documents Supporting Her Damages Theories should be denied.

March 26, 2010

Respectfully submitted,
RELATOR KASSIE WESTMORELAND

By: /s/ Silvija A. Strikis
Mark C. Hansen (BBO # 541753)
Silvija A. Strikis (pro hac vice)
Joseph S. Hall (pro hac vice)
Marc A. Wallenstein (pro hac vice)
Bryan A. Carey (BBO # 650570)
KELLOGG, HUBER, HANSEN, TODD
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (facsimile)

Suzanne E. Durrell (BBO #139280)
DURRELL LAW OFFICE
180 Williams Avenue
Milton, Massachusetts 02186
(617) 333-9681
Fax: (617) 333-0014
Email: Suzanne.durrell@verizon.net

            Robert M. Thomas, Jr. (BBO #645600)
            THOMAS & ASSOCIATES
            280 Summer Street, 5th Floor
            Boston, MA 02210-1131
            (617) 371-1072
            Fax: (888) 676-7420
            Email: rmt@thomasandassoc.net

            Rory Delaney (BBO #655666)
            33 Broad Street, 5th Floor
            Boston, MA 02109
            (857) 498-0384
            Email: rory@rorydelaney.com

            Charles F. Kester (admitted pro hac vice)
            Lawrence M. Isenberg (admitted pro hac vice)
            KESTER & ISENBERG
            Encino Financial Center
            16133 Ventura Boulevard, Suite 260
            Encino, California 91436
            (818) 728-3300
            Fax: (818) 728-3311
            Emails ckester@kesterisenberg.com
            lisenberg@kesterisenberg.com

## CERTIFICATE OF SERVICE

 I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 26, 2010.

             */s/ Silvija A. Strikis*